UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

EKRAMULLAH DHARAMSI
d/b/a PYRAMID CLEANERS,
*et al.*,

      Plaintiffs,

  v.

NATIONWIDE MUTUAL
INSURANCE COMPANY,

      Defendant.

Case No. 2:20-cv-2980
Judge Sarah D. Morrison
Chief Magistrate Judge Elizabeth
P. Deavers

## OPINION AND ORDER

After his dry-cleaning business suffered losses due to the COVID-19 pandemic, Plaintiff Ekramullah Dharamsi d/b/a Pyramid Cleaners sought coverage under an insurance policy issued by Defendant Nationwide Mutual Insurance Company. When Nationwide denied his claim, Mr. Dharamsi filed the instant action. It is now before the Court for consideration of Nationwide's Motion to Dismiss the Amended Complaint. (Mot. to Dismiss, ECF No. 35.) Mr. Dharamsi has responded (Resp., ECF No. 36), and Nationwide filed its reply (Reply, ECF No. 37). Both parties filed notices of supplemental authority, which the Court agreed to consider. (*See* ECF No. 46.) While there is no doubt that COVID-19 has had a devasting impact on Mr. Dharamsi's business, for the reasons set forth below, Nationwide's Motion is **GRANTED**.

I.   BACKGROUND

All well-pled factual allegations in the Amended Complaint (Am. Compl., ECF No. 26) are considered as true for purposes of the Motion to Dismiss. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016). The following summary draws from the allegations in the Amended Complaint, the documents integral to and incorporated therein, and certain other documents which are subject to judicial notice.

A. The Policy

Mr. Dharamsi owns and operates a dry-cleaning business in Mesquite, Texas. (Am. Compl., ¶ 8.) He purchased a business interruption insurance policy from Nationwide (the "Policy," ECF No. 23-1),[1] which was in place from November 12, 2019, through November 12, 2020. (*Id.*, ¶ 10.) The Policy also covered a dry-cleaning business in Dallas, Texas, owned by Aminmohamed Dharamsi, and another in Garland, Texas, owned by Nortez Inv. Inc. (*Id.*, ¶¶ 11, 12.) These three businesses constitute the "Covered Properties."

The Policy is an "all-risk policy," meaning it provides "coverage for all losses . . . unless a loss is specifically excluded or limited in the Policy." (*Id.*, ¶ 17.) It contains the following relevant provisions:

- *<u>Coverage</u>*. Nationwide will pay for "direct physical loss of or damage to" Covered Property "caused by or resulting from any Covered Cause of Loss." (Policy, PAGEID # 155.)

---

[1] Portions of the Policy are attached to the Amended Complaint. (ECF No. 26-1.) The entire Policy is attached to Nationwide's first Motion to Dismiss. (ECF No. 23-1.)

- ***Covered Cause of Loss***. "This Coverage Form insures against direct physical loss" unless the loss is otherwise excluded or limited. (*Id.*, PAGEID # 156.)

The Policy also includes, *inter alia*, the following "Additional Coverages":

- ***Business Income Coverage***. Covers "actual loss of 'business income'" sustained due to the suspension of operations; the "suspension must be caused by direct physical loss of or damage to property at the described premises." (*Id.*, PAGEID # 159–60.)

- ***Extra Expense Coverage***. Covers "extra expense" that "you would not have incurred if there had been no direct physical loss of or damage to property at the described premises." (*Id.*, PAGEID # 160–61.)

- ***Civil Authority Coverage***. When a "Covered Cause of Loss causes damages to property other than property at the described premises . . . we will pay for the actual loss of Business Income you sustain . . . caused by action of civil authority that prohibits access to the described premises . . . ." (*Id.*, PAGEID # 161.)

All coverage under the Policy is subject to certain exclusions, including "damage or loss caused directly or indirectly by" "any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion Clause"). (*Id.*, PAGEID # 174, 176.)

### B. Impact of COVID-19 on the Covered Properties

On March 13, 2020, Texas Governor Greg Abbott issued a State of Emergency as a result of the COVID-19 pandemic. (Am. Compl., ¶ 37. *See also* ECF No. 23-2.) Shortly thereafter, Governor Abbott issued orders recommending that Texans avoid crowds of more than ten people, and closing all "non-essential businesses." (*Id.*, ¶¶ 38, 40. *See also* ECF Nos. 23-3, 23-4.) Dry-cleaning businesses were deemed essential and permitted to remain open. (*Id.*, ¶ 40.) Dallas County, where the three Covered Properties are located, also issued a shelter-in-place order requiring all

residents to stay home except to perform essential activities or services. (*Id.*, ¶ 39. *See also* ECF No. 23-5.)

On March 25, 2020, Mr. Dharamsi learned that employees of the Mesquite location had been in contact with an individual who contracted the coronavirus. (*Id.*, ¶ 53.) He closed that location for almost six weeks while the affected employees were in quarantine. (*Id.*, ¶¶ 43, 53.) Because the Mesquite location performed dry-cleaning services for the Dallas and Garland locations, the latter two were also unable to serve customers during that time. (*Id.*, ¶¶ 42, 54.) Even after re-opening, demand for Mr. Dharamsi's services "suffered a sharp decline . . . because [his] customers were impacted by the stay at home orders." (*Id.*, ¶ 52.) Mr. Dharamsi further alleges that the customer-facing nature of his business required constant cleaning and sanitation to mitigate risk of contamination. (*Id.*, ¶¶ 56–57, 64–65.)

Mr. Dharamsi alleges that he suffered losses in excess of $150,000. (*Id.*, ¶ 4.) Nationwide denied his claim to recover for those losses under the Policy. (*Id.*, ¶ 14.)

## II. PROCEDURAL BACKGROUND

Mr. Dharamsi, along with Aminmohamed Dharamsi and Nortez Inv. Inc., filed this action on June 10, 2020. (ECF No. 1.) After Nationwide moved to dismiss the original complaint, Mr. Dharamsi filed the operative Amended Complaint.[2] (ECF No. 26.) The Amended Complaint asserts one claim for declaratory judgment,

---

[2]Aminmohamed Dharamsi and Nortez Inv. Inc. were not named as plaintiffs in the Amended Complaint, and are no longer parties to this action. *See Courser v. Allard*, No. 1:16-cv-1108, 2018 WL 2447970, at *4 (W.D. Mich. May 31, 2018) (noting that Rule 15 allows a plaintiff to drop a party by amending the complaint).

4

asking that the Court declare that Mr. Dharamsi is entitled to coverage under the Policy. Nationwide now moves to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted. (ECF No. 35.)

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## IV. ANALYSIS

### A. Under Ohio's choice-of-law rules, Ohio law applies.

As a threshold matter, the Court must determine the applicable law. "In a diversity action involving an insurance contract, a federal court applies the substantive law of the forum state"—in this instance, Ohio. *Talley v. State Farm Fire and Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). That principle extends to the forum state's choice-of-law rules. *Klaxon Co v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941). Nationwide argues that that the Court should apply Texas law, because "Texas law is clear, and Ohio law is unknown" with regard to the issues before the Court. (Reply, 3.) Mr. Dharamsi instead argues that there is no conflict between Ohio and Texas law, and so Ohio law should apply. (Resp., 7.) The Court agrees with Mr. Dharamsi.

It is well-established that, under Ohio's choice-of-law rules, "an actual conflict between Ohio law and the law of another jurisdiction must exist for a choice-of-law analysis to be undertaken." *Hayslip v. Genuine Parts Co.*, 420 F. Supp. 3d 666, 677 (S.D. Ohio 2019) (Smith, J.) (quoting *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 474, 861 N.E.2d 109, 115 (Ohio 2006)). The parties have not identified "an actual conflict." Ohio and Texas apply the same rules of contract interpretation to insurance contracts. *Compare Wohl v. Swinney*, 888 N.E.2d 1062, 1066 (Ohio 2008) *with State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). If there is ambiguity in the contract (*i.e.*, the terms are subject to two or more reasonable interpretations), both states' laws will construe the policy in favor of the insured—particularly when it comes to the language of exclusions. *Compare King v.*

6

*Nationwide Ins. Co.*, 519 N.E.2d 1380, syllabus (Ohio 1988) *with Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010). Further, in both Ohio and Texas, the insurer carries the burden of showing that an exclusion applies. *Compare Neal-Pettit v. Lahman*, 928 N.E.2d 421, 424 (Ohio 2010) *with Gilbert Tex. Constr.*, 327 S.W.3d at 124. Because there is no "actual conflict" between the applicable laws of Ohio and Texas, the Court will apply Ohio law.

Nationwide's citation to *Hartford Fire Ins. Co. v. Flagstaff Indus., Corp.*, 1:11-cv-1137, 2012 WL 1669845 (N.D. Ohio May 10, 2012) does not change the outcome. In that case, the Northern District conducted a choice-of-law analysis, despite the absence of "conflicting rulings by the different states' highest courts," because plaintiff argued that resolution of the issue would be different under Ohio law than under Pennsylvania law. *Id.*, at *6. The parties make no such argument here, and the Court is not persuaded that the laws of Ohio and Texas would or do conflict on the issues *sub judice*.

### B. The Amended Complaint fails to allege facts sufficient to trigger coverage under the Policy.

The parties first dispute whether Mr. Dharamsi's losses are covered under the Policy. If coverage is triggered, they further dispute whether the Virus Exclusion Clause precludes recovery. Because the question of whether the alleged losses are covered under the Policy is dispositive, the Court begins its analysis there.

Under Ohio law, insurance contracts are construed like any other written contract. *Scott v. Allstate Indem. Co.*, 417 F. Supp. 2d 929, 932 (N.D. Ohio 2006).

7

"The court's role in interpreting a contract is to give effect to the intent of the parties." *Fujitec Am., Inc. v. AXIS Surplus Ins. Co.*, 458 F. Supp. 3d 736, 743 (S.D. Ohio 2020) (Litkovitz, M.J.) (quotation omitted). To give such effect, "[c]ontract terms are generally to be given their ordinary meaning when the terms are clear on their face," and courts must "apply the plain language of the contract when the intent of the parties is evident from the clear and unambiguous language in a provision." *CoMa Ins. Agency v. Safeco Ins. Co.*, 526 F. App'x 465, 468 (6th Cir. 2013) (citations omitted). *See also Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997). "An insurance contract will only require interpretation if the applicable language is ambiguous—that is, open to more than one interpretation." *Scott*, 417 F. Supp. 2d at 932. When an insurance contract contains ambiguous language, such language must be "construed strictly against the insurer and liberally in favor of the insured." *Id.* However, "liberal construction cannot be used to create an ambiguity where one does not exist." *Id.* "If the terms of a policy are clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning." *Id.* at 933.

The Policy provides that Nationwide will "pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." (Policy, PAGEID # 155.) A "Covered Cause of Loss" is a "direct physical loss" that is not otherwise excluded or limited. (*Id.*, PAGEID # 156.) The Policy does not define "direct physical loss."

8

Nationwide argues that the Amended Complaint fails to state a claim for coverage under the Policy because Mr. Dharamsi has not alleged the direct physical loss to the Covered Property required for coverage. (Mot. to Dismiss, 19.) Nationwide points to various courts' interpretation of the term as requiring "distinct, demonstrable, physical alteration of the property" and notes the absence of any similar allegation in the Amended Complaint. (*Id.*, 20–21, collecting cases.) In response, Mr. Dharamsi argues that Nationwide's interpretation of "physical loss or damage" is too narrow, and is "contrary to the plain, reasonable, and intended language of the Policy." (Resp., 12.) He cites cases from across the country for the proposition that "direct physical loss" "does not require structural damage, but lost operations or inability to use the business is sufficient." (*Id.*, 14.) Mr. Dharamsi argues that, under this definition, the Amended Complaint sufficiently alleges that COVID-19 caused losses that trigger coverage under the Policy. (*Id.*, 22.)

This Court recently considered the meaning of the term "direct physical loss" in a similar policy. *See Dakota Girls, LLC v. Phila. Indem. Ins. Co.,* No. 2:20-cv-2035, 2021 WL 858489, at *6 (S.D. Ohio Mar. 8, 2021) (Morrison, J.). Giving the words their ordinary meaning, the Court concluded that the phrase is unambiguous, and requires "'a material or perceptible destruction, harm, or ruin to covered property" and that "a simple 'loss of use'" was insufficient to trigger coverage. *Id.* In so holding, the Court relied on Ohio's leading case and persuasive federal authority interpreting Ohio law. *Id.* (citing *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130, 1143 (Ohio Ct. App. 2008) (holding that the term "physical"

9

"preclude[s] any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property") (quoting 10A COUCH ON INSURANCE § 148:46 (3d Ed. 1998))). *See also Bridal Expressions LLC v. Owners Ins. Co.*, No. 1:20-cv-833, 2021 WL 1232399, at *5–6 (N.D. Ohio Mar. 23, 2021) (finding that "equating loss of intended use of property with physical loss of the property would result in an unreasonable interpretation of the words of the policy"); *MIKMAR, Inc. v. Westfield Ins. Co.*, No. 1:20-cv-01313, 2021 WL 615304, at *5–8 (N.D. Ohio Feb. 17, 2021) ("[T]he ordinary and plain meaning of the phrase 'physical loss of or damage to' property requires a tangible, material destruction or deprivation of possession."); *Equity Planning Corp. v. Westfield Ins. Co.*, No. 1:20-cv-01204, 2021 WL 766802, at *8–16 (N.D. Ohio Feb. 26, 2021) (same); *Family Tacos, LLC v. Auto Owners Ins. Co.*, No. 5:20-cv-01922, 2021 WL 615307, at *4–9 (N.D. Ohio Feb. 17, 2021) (same). *But see Henderson Rd. Rest. Sys. v. Zurich Am. Ins. Co.*, No. 1:20-cv-1239, 2021 WL 168422, at *10 (N.D. Ohio Jan. 19, 2021) (finding that "direct physical loss or damage to" is ambiguous).[3]

---

[3] Since the *Dakota Girls* Opinion and Order was issued, the Ohio Supreme Court has accepted the following questions on certification from the Northern District of Ohio:

> Does the general presence in the community, or on surfaces at a premises, of the novel coronavirus known as SARS-CoV-2, constitute direct physical loss or damage to property; or does the presence on a premises of a person infected with COVID-19 constitute direct physical loss or damage to property at that premises?

The Court sees no reason to adopt a different interpretation of the phrase here, so it turns to the Amended Complaint to determine whether Mr. Dharamsi has adequately alleged "direct physical loss or damage" to the Covered Properties.

The Amended Complaint alleges that Mr. Dharamsi "suffered direct physical loss or damage within the definition of the Policy ***as loss of intended use of property, as in this case, constitutes loss or damage***." (Am. Compl., ¶ 27) (emphasis added). Elsewhere, he alleges that "[t]his loss is physical. Plaintiff is unable to use their [*sic*] property in the manner in which it had previously used it." (*Id.*, ¶ 61). It is plain to see that, despite his invocation of the Policy language, the Covered Properties did not experience a material or perceptible destruction, harm, or ruin. The Court need not "credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686. Here, the thrust of the Amended Complaint is that Mr. Dharamsi suffered losses because customers were impacted by the stay-at-home order, he had to close the Mesquite location after an employee was exposed to the virus, and the retail nature of his business required constant cleaning and sanitizing. None of these losses constitute "direct physical loss of or damage to" the Covered Property, as required to trigger coverage under the Policy.

---

*Neuro-Commc'n Servs. Inc. v. Cincinnati Ins. Co.*, 166 N.E.3d 29 (Ohio 2021) (table). However, this does not alter the Court's earlier conclusion that the "law in this area is well-established." *Dakota Girls*, 2021 WL 858489, at *5 n.5.

Mr. Dharamsi also argues that he has alleged facts sufficient to show that his losses are covered under the Business Income, Extra Expense, and Civil Authority Coverages (Resp., 23, 25.) His argument fails. The Business Income Coverage applies when there is a suspension of operations "caused by direct physical loss of or damage to property . . . ." (Policy, PAGEID # 160.) Similarly, the Extra Expense Coverage applies when a business incurs expenses that "would not have [been] incurred if there had been no direct physical loss of or damage to property at the described premises." (*Id*.) For the reasons set out above, Mr. Dharamsi has not alleged direct physical loss of or damage to property. Accordingly, he has not triggered the Business Income or Extra Expense Coverages.

The Civil Authority Coverage requires, *inter alia*: (1) damage to property other than the Covered Property; and (2) action of a civil authority prohibiting access to the Covered Property. (*Id*., PAGEID # 161.) The facts alleged in the Amended Complaint fail to establish either of these elements. As to the first, while the Amended Complaint does allege that there was damage to other property (*see* Am. Compl., ¶¶ 24, 48, 49), those statements are conclusory and made without reference to any supporting facts. And as to the second, the Amended Complaint does not allege that any civil authority prevented access to any of the Covered Properties. Rather, under the orders in place in Texas and Dallas County, dry cleaners were deemed essential and permitted to remain open. When the Mesquite location did close, it was not due to any civil authority order—but due, instead, to Mr. Dharamsi's own prudent decision-making.

Because the Amended Complaint fails to allege that coverage under the Policy was triggered in the first instance, the Court need not consider whether the Virus Exclusion Clause applies.

### C. The Court need not address Mr. Dharamsi's regulatory estoppel argument.

Finally, Mr. Dharamsi argues that it would be premature for the Court to grant Nationwide's Motion because the Virus Exclusion Clause "butts against regulatory estoppel principles." (Resp., 12.) However, because the Court has dismissed the Amended Complaint on other grounds, it need not consider this argument.

## V. CONCLUSION

Nationwide's Motion to Dismiss (ECF No. 35) is **GRANTED** and the action is **DISMISSED**.

    IT IS SO ORDERED.

    /s/ Sarah D. Morrison
    **SARAH D. MORRISON**
    **UNITED STATES DISTRICT JUDGE**